IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS A. MONTOYA, District Ranger, Yankee Fork Ranger District, Salmon-Challis National Forest, U.S. FOREST SERVICE,<br><br>    Defendants. | Case No. CV-04-342-E-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it cross-motions for summary judgment filed by WWP and the Forest Service. The Court heard oral argument on April 5, 2005, and the motions are at issue. For the reasons expressed below, the Court finds that it has jurisdiction over this dispute, but will deny summary judgment on the merits and set this matter for an evidentiary hearing.

## LITIGATION BACKGROUND

WWP challenges the Forest Service's decision to allow grazing on the Spud Creek and Marco Creek allotments in the Salmon-Challis National Forest. The

**Memorandum Decision and Order – Page 1**

Forest Plan requires that grazing on the allotments comply with Allotment Management Plans (AMPs) and permits.  The AMPs establish general grazing standards for the allotments, and those standards are then incorporated into term grazing permits that give specific individuals or entities authority to graze cattle on certain lands. The permits are typically for 10-year periods.

To adjust the terms of the 10-year permits on a year-by-year basis, the Forest Service issues Annual Operating Instructions (AOIs) for each permit.  The AOIs are designed to make fine-tuned adjustments to grazing restrictions to take into account specific changes in conditions.  For example, after a drought, the Forest Service might restrict grazing through an AOI to protect vegetation.  According to the Forest Service, the goal of the AOI is to implement the decisions already made in the AMPs and Forest Plan, not to make new decisions going beyond those programmatic documents.

WWP alleges, however, that the Forest Service has recently been using AOIs to allow grazing in excess of that permitted by the AMPs and Forest Plan. More specifically, WWP alleges that in 1997, the Forest Service issued AOIs that set up an "experimental time-controlled grazing system" that was not authorized by the AMPs.  *See Complaint* at ¶ 50-51.  In 2002 the Forest Service allegedly abandoned this system, and issued a new AOI that allowed grazing "for a longer

**Memorandum Decision and Order – Page 2**

period of time," again in violation of the AMPs. *Id.* at ¶ 52-53. This violation continued in AOIs issued for 2003 and 2004. *Id.* at ¶ 54.

WWP asserts that the Forest Service, in addition to issuing AOIs that go beyond the AMPs, is allowing grazing on the two allotments without doing the range and wildlife monitoring required by the Forest Plan and AMPs. In addition, WWP asserts that the Forest Service is allowing grazing on the two allotments without enforcing permit requirements that holders complete range improvements.

The lack of monitoring and range improvements has led to environmental damage, WWP contends. For example, many of the range improvements were designed to bring water to the cattle so they would not trample through riparian areas in search of water. The failure to complete these projects, WWP alleges, has resulted in cattle ruining riparian areas. Moreover, WWP asserts that the Forest Service has failed to catch these violations because they are not doing the monitoring required by the Forest Plan and AMPs.

Thus, WWP's complaint claims that the Forest Service violates NFMA and the APA by (1) issuing AOIs that allow grazing in excess of utilization and grazing season standards set in AMPs and the Forest Plan; (2) allowing grazing on the two allotments without doing the required monitoring; and (3) allowing grazing on the two allotments without requiring that permittees complete range improvements.

**Memorandum Decision and Order – Page 3**

Both sides have filed summary judgments, seeking to resolve jurisdictional and substantive issues. The Court will turn first to the jurisdictional issues.

## JURISDICTIONAL ANALYSIS

**1.      Mootness– WWP's First Claim**

The Court turns first to WWP's claim that the Forest Service has in the past issued AOIs that allow grazing in excess of the utilization and season-of-use restrictions found in the AMPs and Forest Plans. The Forest Service argues that these claims are moot because the 2004 AOIs have expired and no new AOIs have taken their place. The Court disagrees.

Even though past AOIs have expired, the alleged damage they inflicted still exists, according to WWP. For example, WWP alleges that riparian areas were damaged by grazing cattle looking for water that should have been provided by range improvements. This type of environmental damage does not "expire" along with the AOIs – it is continuing in nature. While the violation has ceased, the harm caused by that violation allegedly continues, and it is that harm that WWP seeks to remedy in this case.

The Ninth Circuit has consistently held in environmental cases that the mere cessation of the alleged violation is not enough to moot the case so long as (1) there is a continuing injury from the violation and (2) there is effective relief

**Memorandum Decision and Order – Page 4**

available to counteract the effects of the violation.  In *Northwest Envtl. Def. Ctr. v. Gordon,* 849 F.2d 1241 (9th Cir.1988), the plaintiff challenged a fishing regulation, in effect for the year 1986 only, on the ground that it allowed the harvest of too many salmon.  Because the suit was brought after the 1986 fishing season was over and the regulation had expired, the defendants argued that the case was moot.  The Circuit disagreed because the harm (a reduction in salmon runs) was continuing and a potential remedy (increasing spawning to counteract the reductions) was available to the court.  *Id*. at 1244-45.

The Circuit engaged in a similar analysis in *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059 (9th Cir. 2002).  There, the Forest Service argued that a challenge to a logging project was mooted because the trees had been removed before relief was requested.  The Circuit disagreed, holding that the case was not moot because the harm caused by the logging (lost habitat) was continuing, and a potential remedy (increasing habitat elsewhere) was available to the court.  *Id*. at 1066.

The same situation exists here.  The alleged harm (damage to riparian areas caused by grazing) is continuing in nature, and a potential remedy (enjoining grazing) is available to the Court.  Of course, WWP must prove these allegations.  But the allegations cannot be deemed moot under *Neighbors* and *Gordon.*

**Memorandum Decision and Order – Page 5**

**2.**     **Mootness – WWP's Second & Third Claims**

The Court turns next to the other two claims of WWP. These claims challenge the Forest Service's decision to allow grazing on the two allotments despite the lack of monitoring and range improvements.

The mootness analysis is somewhat different for these two claims. These claims do not challenge the content of past AOIs, as did WWP's first claim. Instead, they challenge the current decision to allow grazing to continue despite the lack of monitoring and range improvements.

So long as there is current Forest Service authorization to graze these two allotments, these two claims cannot be deemed moot. In fact, current authorization does exist, according to the Forest Service Declarations.

The Forest Service submitted the Declaration of Richard Forsman, a Regional Rangelands Program Leader with the Forest Service. Forsman states that "the document that authorizes livestock grazing on National Forests to a specific individual (permittee) is the term grazing permit." *See Declaration of Forsman* at ¶ 6. He goes on to state that "[a]nnual authorization for the term grazing permit is provided by the permittee's payment of the bill for collection" and that "[u]pon receipt of payment the permittee can place livestock on National Forest lands in accordance with the permit." *Id*. at ¶ 7. According to Forsman, "the AOIs are not

**Memorandum Decision and Order – Page 6**

a required document and do not authorize grazing use." *Id*. at ¶ 8.

Under Forsman's description, the lack of an AOI would not preclude grazing so long as a permit is in place. Here, there are permits in place for both allotments at issue.

WWP is challenging the Forest Service's decision to allow grazing despite the lack of monitoring and range improvements. That Forest Service decision to allow grazing, according to Forsman, was made when the permits were issued. Thus, the expiration of the 2004 AOIs cannot moot these claims because permit holders still have current authorization to graze cattle under their permits.

**3.**     ***Norton v. SUWA***

The Forest Service argues next that WWP is making a "failure to act" claim that is barred by *Norton v. Southern Utah Wilderness Alliance*, 124 S.Ct. 2373 (2004). The Court disagrees. WWP is not complaining that the Forest Service has failed to act, but is alleging instead that the Forest Service has taken action – by authorizing grazing – that violates NFMA and the APA. *Norton* does not apply to such a challenge. *See Oregon Natural Desert Assoc. v. U.S. Forest Service*, 2004 WL 1592606 (D.Or. July 15, 2004) (holding that *Norton* did not apply to claim that

**Memorandum Decision and Order – Page 7**

Forest Service allowed grazing to continue in violation of environmental laws).[1]

In a related argument, the Forest Service alleges that WWP is making a "pattern or practice" argument that has been banned by *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990); *see also Institute for Wildlife Protection v. Norton*, 2004 WL 2155344 (W.D.Wash. Sept. 7, 2004). The *Lujan* case ruled that plaintiffs must "attack some particular agency action that causes it harm" rather than merely seek "wholesale improvement of [a] program by court decree." *Id*. at 891. WWP is following *Lujan's* direction. Their complaint challenges particular agency action – that is, the past AOIs that have allegedly caused environmental harm that is continuing today.

### 4. Final Agency Action Under the APA

This Court's authority to review agency decisions is limited to "final agency actions" under the APA. *See* 5 U.S.C. §§ 702, 706(2). An action is "final" if it "marks the consummation of the agency's decision-making process" and creates "rights and obligations" or "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177 (1997).

With regard to WWP's claims that past AOIs have caused injury to these

---

[1] This analysis also resolves the Forest Services arguments under *Heckler v. Chaney*, 470 U.S. 821 (1985).

**Memorandum Decision and Order – Page 8**

allotments, the Forest Service argues that the AOIs challenged by WWP merely implement the decisions already made in the permit and AMPs, and thus do not constitute the type of "final agency action" that is judicially reviewable.

WWP responds that the AOIs go beyond the terms of AMPs and Forest Plans and thus cannot be construed as mere implementation tools. If that is true, the AOIs would be final decisions. As discussed further below, the Court is not prepared in this summary judgment context to make findings as a matter of law on whether the Forest Service has in fact issued AOIs that go beyond the AMPs and Forest Plans. That will be WWP's burden to prove at an evidentiary hearing that will be discussed more below. At this stage, it is enough to say that the Court cannot find as a matter of law that the AOIs are not final agency actions under the APA.

**5.      Rescissions Act**

The Forest Service contends that the Rescissions Act bars WWP's claims. The original Rescissions Act of 1995, Pub. L. No. 104-19, § 504, 109 Stat. 194, 212-13, required the Forest Service to adhere to a schedule for the completion of NEPA analysis on grazing allotments, and stated that any permits that expired "before the NEPA analysis . . . pursuant to [that] schedule . . . shall be issued on the same terms and conditions and for the full term of the expired or waived

**Memorandum Decision and Order – Page 9**

permit."

The Act limited its reach by stating that it "shall only apply if a new term grazing permit has not been issued to replace an expired or waived term grazing permit solely because the analysis required by NEPA and other applicable laws has not been completed and also shall include permits that expired or were waived in 1994 and 1995 before the date of enactment of this Act."[2]

This language bars WWP from challenging the renewal of an expired permit on the ground that the Forest Service failed to complete the analysis required by NEPA or "other applicable laws."  In this case, however, WWP makes no such challenge.  WWP's first claim challenges the damage caused by past AOIs, not the failure to do a NEPA analysis.  WWP's second and third claims focus on current permits and their authorization of grazing despite the lack of monitoring and range improvements. WWP is not challenging the renewal of an expired permit due to the failure to do a NEPA analysis.

The Act clearly gives the Forest Service a "safe harbor" protection from suits while the agency completes a NEPA analysis on expired permits.  The Forest Service reads the Act to extend this "safe harbor" protection to the period

---

[2] Subsequent acts of Congress have extended these provisions to permits that expired in 2003, *see* Pub. L. No. 108-7, 2003 HR 2 § 328, and to permits expiring in 2004 through 2008, *see* Pub. L. No. 108-108, 203 HR 2691 § 325.

**Memorandum Decision and Order – Page 10**

necessary for the agency to complete range improvements and wildlife monitoring. However, the Act confers no such broad immunity.

The reach of the Act is short – the only challenges it bars are those to renewed permits on the ground that "an analysis required by NEPA or other applicable laws" is not done. And it linked this narrow and temporary bar to a mandatory requirement that the Forest Service set a schedule for that "analysis." Thus, the Forest Service obtains the Act's protections only if it complies with the schedule requirement. *See Greater Yellowstone Coalition v. Bosworth*, 209 F.Supp.2d 156, 163 (D.D.C. 2002) (holding that Forest Service could not rely on Rescissions Act when it had failed to comply with the schedule requirement).

Even if range improvements and wildlife monitoring could be considered "an analysis" – a stretch the Court rejects – there is no evidence that the Forest Service has set a schedule under the Rescissions Act for the completion of the range improvements and wildlife monitoring. Without that schedule, the Forest Service cannot take advantage of any immunity conferred by the Act.

**6.     Agency Decisions Committed to Agency Discretion By Law**

The Forest Service argues that judicial review of WWP's claims is precluded by § 701(a)(2), which bars review of "agency action committed to agency discretion by law." The Forest Service asserts that "it is solely a matter of agency

**Memorandum Decision and Order – Page 11**

discretion" as to how permit violations are handled and that it "is not for the Court, or [WWP] to decide whether violations are to be pursued, and if so, which, when, and how." *See Forest Service Opening Brief* at p. 15.

However, monitoring is a duty of the Forest Service, not the permittees, and so this argument is inapplicable to WWP's monitoring claim: "[T]he courts clearly permit a plaintiff to raise claims pertaining to inadequate monitoring by bringing an APA challenge to a final decision." *Ecology Center v. U.S. Forest Service*, 192 F.3d 922, 926 (9th Cir. 1999).

The analysis is somewhat different for range improvements, which appear to be the obligation of permittees, at least in the first instance. WWP alleges, however, that the Forest Service has failed to enforce the permittees' obligations over the years, resulting in mounting environmental damage. If proven, these allegations may show that grazing is violating the Forest Plans and NFMA. Thus, depending on the proof at trial, this issue could transcend a minor permit compliance issue between the agency and permittees, and implicate the agency's duties under NFMA.

For all of these reasons, the Court finds that WWP's claims are not barred by § 701(a)(2) of the APA.

## 7.  Conclusion on Jurisdiction

The Court finds that this action seeks to review "final agency action" under the APA, and cannot be deemed moot. The Court rejects arguments that its jurisdiction is affected by § 701(a)(2) of the APA, the Rescissions Act, or the *Norton* case. For these reasons, the Court finds that it has subject matter jurisdiction over this case.

## ANALYSIS ON THE MERITS

There are major disputes in this case over whether range improvements and monitoring are being completed, and over whether past AOIs allowed grazing in excess of AMPs and Forest Plans. The Forest Service has filed Declarations stating that permittees were timely completing the range improvements that were their obligation. *See Declarations of Dopp and Montoya*. In addition, the Forest Service filed an affidavit discussing monitoring. *See Declaration of Wenger*.

Counsel also discussed at oral argument the fact that a subsidiary of WWP known as Valley Sun is a "preferred applicant" holding a permit to graze one of the allotments at issue here. The effect of this was not briefed. The Court cannot reach any decision without fully understanding the ramifications of this fact.

For all of these reasons, the Court cannot resolve these issues as a matter of law. The Court will therefore deny the summary judgments to the extent they seek a ruling on the merits, and will direct the Clerk to set this case for an evidentiary

**Memorandum Decision and Order – Page 13**

hearing.

## FINAL CONCLUSION

In conclusion, the Court will grant in part and deny in part WWP's motion, and will deny the Forest Service's motion. The Court will grant WWP's motion to the extent it seeks a summary judgment on the issue of the Court's subject matter jurisdiction. The Court will deny the motion in all other respects, and will deny the Forest Service's motion, finding that issues of fact exist on the merits.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment filed by WWP (Docket No. 12) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks a ruling that this Court has subject matter jurisdiction over this dispute. It is denied in all other respects.

IT IS FURTHER ORDERED, that the motion for summary judgment filed by the Forest Service (Docket No. 30) is DENIED.

DATED: **April 20, 2005**

B. LYNN WINMILL  
Chief Judge  
United States District Court

**Memorandum Decision and Order – Page 14**